UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-80062-CANNON

UNITED STATES OF AMERICA

vs.

RAUL LOPEZ-PEREZ,
 a/k/a "Francisco VELASCO-MORALES",

  Defendant.
_____/

**PLEA AGREEMENT**

The United States Attorney's Office for the Southern District of Florida ("this Office") and RAUL LOPEZ-PEREZ, a/k/a "Francisco VELASCO-MORALES" (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to the Indictment, which charges the Defendant with illegal reentry to the United States, in violation of Title 8, United States Code, Section 1326(a) and (b)(1).

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and

understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of ten (10) years, followed by a term of supervised release of up to three (3) years, but not less than one year. In addition to the term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 and order restitution.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing

recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing, the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This office, however, will not be required to make these recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court impose a sentence at the low end of the advisory sentencing guideline range produced by application of the Sentencing Guidelines. If the low end of the advisory sentencing guideline range is less than six (6) months'

3

incarceration, the government shall recommend a sentence of six (6) months' incarceration.

8. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

9. ~~This Office agrees that, although not binding on the probation office or the Court, that it will recommend that the Court impose a sentence at the low end of the advisory sentencing guideline range produced by application of~~ the Sentencing Guidelines. *[initialed]*

10. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a natural-born citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which defendant is pleading guilty. In addition, under certain circumstances, denaturalization may also be a consequence of pleading guilty to a crime. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's

immigration status. The defendant nevertheless affirms that he defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's denaturalization and automatic removal from the United States.

9. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 5/23/23    By: _____
GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

Date: 5/23/23    By: _____
FELIPE JARAMILLO
ATTORNEY FOR THE DEFENDANT

Date: 5/23/23    By: _____
RAUL LOPEZ-PEREZ,
a/k/a "Francisco VELASCO-MORALES",
DEFENDANT

5

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-80062-CANNON

UNITED STATES OF AMERICA

vs.

RAUL LOPEZ-PEREZ,
   a/k/a "Francisco VELASCO-MORALES",

          Defendant.
_____/

## FACTUAL PROFFER

The United States of America, RAUL LOPEZ-PEREZ, a/k/a "Francisco VELASCO-MORALES" (hereinafter referred to as the defendant or "LOPEZ-PEREZ"), and his counsel agree that, had this case proceeded to trial, the United States' evidence would have shown, beyond a reasonable doubt, that, among other things:

1. On or about March 9, 2023, LOPEZ-PEREZ was arrested in Palm Beach County, Florida on an outstanding warrant for violation of probation in Palm Beach County case number 14CT023809AMB. He was booked and detained at the Palm Beach County Jail.

2. A review of the immigration records shows that LOPEZ-PEREZ is a native and citizen of Guatemala. Records further show that on or about November 12, 2011, LOPEZ-PEREZ was ordered removed Mexico, as at that time he falsely identified himself as Francisco VELASCO-MORALES and claimed Mexican citizenship. The Order of Removal was executed on the same day, that is on or about November 12, 2011, whereby LOPEZ-PEREZ was removed from the United States and returned to Mexico.

3. On November 1, 2014, LOPEZ-PEREZ was arrested for driving while under the influence and driving without a valid driver's license in Palm Beach County, case number

1

14CT023809AMB. He failed to appear for Court and a capias for his arrest was issued. On May 10, 2018, LOPEZ-PEREZ was arrested and plead guilty to the DUI charges on May 14, 2018. He was sentenced to 12 months' probation.

4. Thereafter, LOPEZ-PEREZ re-entered the United States illegally, his prior order of removal was reinstated, and on or about June 28, 2018, he was removed and returned to Mexico for the second time.

5. On March 12, 2019, and May 7, 2019, warrants were issued for LOPEZ-PEREZ' arrest for his violation of probation.

6. Thereafter, LOPEZ-PEREZ re-entered the United States illegally using his alias Francisco VELASCO-MORALES. Records further show that on or about September 12, 2019, in the United States District Court, Southern District of Florida, LOPEZ-PEREZ was convicted of the felony offense of illegal re-entry of a removed alien, case number 19-80130-CR-Ruiz. Prior to state officials learning, or LOPEZ-PEREZ' advising, that he had violations of probation outstanding, his prior order of removal was reinstated and after true citizenship was revealed he was on or about November 12, 2019, removed for the third time and returned to Guatemala.

7. LOPEZ-PEREZ's fingerprints, taken in connection with his March 9, 2023, arrest in Palm Beach County for the outstanding 2019 violation of probation warrant, were scanned into the IAFIS system. Results confirmed that scanned fingerprints belong to the individual who was previously removed from the United States, that is LOPEZ-PEREZ.

9. A record check was performed in the Computer Linked Application Informational Management System to determine if LOPEZ-PEREZ filed an application for permission to reapply for admission into the United States after deportation or removal. After a search was performed in that database system, no record was found to exist indicating that LOPEZ-PEREZ obtained

consent from the Attorney General of the United States or from the Secretary of Homeland Security, for re-admission into the United States as required by law.

The parties agree that these facts meet the elements of and are sufficient to prove the defendant's guilt beyond a reasonable doubt in this case.

1. By agreeing to these facts, LOPEZ-PEREZ agrees the following elements of illegal reentry after removal, in violation of Title 8, United States Code, Section 1326(a) and (b)(1), as charged in the Indictment, would be proven beyond a reasonable doubt had this case gone to trial:

   a. the Defendant was an alien at the time alleged in the indictment;
   b. the Defendant had been removed from the United States;
   c. the Defendant was found to be voluntarily back in the United States; and
   d. the Defendant did not have the consent of the Attorney General or the Secretary of Homeland Security to apply for readmission to the United States.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 5/23/23    By: _____
                     GREGORY SCHILLER
                     ASSISTANT UNITED STATES ATTORNEY

Date: 5/23/23    By: _____
                     FELIPE JARAMILLO
                     ATTORNEY FOR THE DEFENDANT

Date: 5/23/23    By: _____
                     RAUL LOPEZ-PEREZ,
                     a/k/a "Francisco VELASCO-MORALES",
                     DEFENDANT

3